**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ECF CASE |
| Plaintiff, | |
| -against- | Case No. 12-CIV-5028 |
| HARBINGER CAPITAL PARTNERS LLC; PHILIP A. FALCONE; AND PETER A. JENSON, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

_____

**PHILIP A. FALCONE AND HARBINGER CAPITAL PARTNERS LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**
_____

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT .................................................................................................................... 3

    A. The Securities Fraud Claims Relating to the Loan Should Be Dismissed Because the Complaint Fails to Allege Any Misrepresentations or Omissions in Connection with the Offer, Purchase or Sale of Securities ............................................................................. 3

        1. The Pledge Does Not Satisfy the "in Connection with" Requirement .................... 3

        2. The Loan Is Not A Security ..................................................................................... 6

    B. The Fraud-Based Claims Relating to the Preferential Liquidity "Scheme" Must Be Dismissed Because the Complaint Fails to Adequately Plead *Scienter* ................... 7

    C. The Complaint Fails to Allege Any Material Misrepresentations or Omissions About the Loan or the Preferential Liquidity "Scheme" .................................................. 8

        1. The Loan Claims Fail to Satisfy the Materiality Requirement ............................... 8

        2. The Preferential Liquidity Claims Also Do Not Satisfy the Materiality Requirement ................................................................................................... 10

III. CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Bass v. Janney Montgomery Scott, Inc.*,
  210 F.3d 577 (6th Cir. 2000) .................................................................................................... 7

*Benedict v. Amaducci*,
  1995 WL 413206 (S.D.N.Y. July 12, 1995) .............................................................................. 6

*Chemical Bank v. Arthur Andersen & Co.*,
  726 F.2d 930 (2d Cir. 1984) ............................................................................................ 1, 2, 4, 5

*Enterprise Co. v. Draper Fisher Jurvetson Mgmt. Co.*,
  2005 WL 3590984 (N.D. Cal. 2005) ......................................................................................... 9

*Goldstein v. SEC*,
  451 F.3d 873 (D.C. Cir. 2006) ................................................................................................... 9

*Gould v. Winstar Communications, Inc.*,
  692 F.3d 148 (2d Cir. 2012) ...................................................................................................... 8

*In re Reserve Fund Sec.*,
  732 F. Supp. 2d 310 (S.D.N.Y. 2010) ....................................................................................... 7

*Reves v. Ernst & Young*,
  494 U.S. 56 (1990) ................................................................................................................ 2, 3

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
  630 F.3d 866 (9th Cir. 2010) ..................................................................................................... 4

*Ring v. Axa Financial, Inc.*,
  483 F.3d 95 (2d Cir. 2007) ........................................................................................................ 4

*Romano v. Kazacos*,
  609 F.3d 512 (2d Cir. 2010) ...................................................................................................... 5

*Rubin v. United States*,
  449 U.S. 424 (1981) .................................................................................................................. 3

*SEC v. Czarnik*,
  2010 WL 4860678 (S.D.N.Y. Nov. 10, 2010) .......................................................................... 7

*SEC v. Dunn*,
  587 F. Supp. 2d 486 (S.D.N.Y. 2008) ....................................................................................... 7

*SEC v. Gabelli*,
  653 F.3d 49 (2d Cir. 2011) ...................................................................................................... 10

*SEC v. Mannion*,
  789 F. Supp. 2d 1321 (N.D. Ga. 2011) ..................................................................................... 9

*SEC v. Pentagon Capital Mgmt. PLC*,
  612 F. Supp. 2d 241 (S.D.N.Y. 2009) ....................................................................................... 7

*SEC v. Roanoke Technology Corp.*,
  2006 WL 3813755 (M.D. Fla. Dec. 26, 2008) ........................................................................... 4

*SEC v. Tourre*,
  2012 WL 5838794 (S.D.N.Y. Nov. 19, 2012) ............................................................................ 4

*SEC v. Zandford*,
  535 U.S. 813 (2002) ............................................................................................................... 1, 4

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ....................................................................................................... 7

Defendants Harbinger Capital Partners LLC ("Harbinger") and Philip A. Falcone (collectively, the "Harbinger Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's Complaint (the "Complaint").[1]

## I. PRELIMINARY STATEMENT

Plaintiff claims that the "allegations in the Complaint offer detailed facts demonstrating Defendants' violation of the federal securities laws." Opp. Brief at 1. But as the Second Circuit has held, the purpose of the federal securities laws is to "protect persons who are deceived in securities transactions". *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984). Here, the Complaint does not allege that anyone was deceived in a *securities transaction*. Instead, the Complaint alleges facts that, at worst, purport to state claims for breach of fiduciary duty. Plaintiff cannot, however, bootstrap purported breach of fiduciary duty claims into claims for securities fraud, merely by characterizing the Defendants' conduct as part of a "scheme." *See SEC v. Zandford*, 535 U.S. 813, 825 n.4 (2002) ("our analysis does not transform every breach of fiduciary duty into a federal securities violation"). To state a claim for securities fraud, the plaintiff must satisfy the specific pleading requirements for securities fraud claims. Because Plaintiff has failed to do so here, Plaintiff's securities fraud claims must be dismissed.

As to the Loan,[2] Plaintiff's claims under Section 17(a), Section 10(b) and Rule 10b-5 should be dismissed because the Complaint does not allege, as it must, that the Harbinger Defendants made any misrepresentations or omissions (or engaged in any other fraudulent conduct) "in connection with" the "offer or sale" or "purchase or sale" of securities. The only relevant securities—interests in the Harbinger Capital Partners Special Situations Fund ("SSF")—were undisputedly subject to a

---

[1] The Harbinger Defendants adopt the arguments set forth in defendant Peter A. Jenson's Reply Memorandum of Law in Further Support of his Motion to Dismiss the Complaint to the extent they apply to the claims asserted against the Harbinger Defendants.

[2] Capitalized terms not defined herein have the meanings stated in the Harbinger Defendants' opening brief.

"lock-up" (the "Lock-up") during the relevant period, and thus by definition were not offered, purchased, or sold.

Plaintiff advances two theories in an effort to find a security that satisfies the "in connection with" requirement. First, Plaintiff argues that Falcone's pledge of his own interest in the SSF as collateral for the Loan qualifies as a security. (Opp. at 15.) But that argument was expressly rejected by the Second Circuit in *Chemical Bank*, where the court held that "a proscribed act in a transaction of which the pledge of a security is a part" does not satisfy the "in connection with" requirement. 726 F.2d at 943. Remarkably, Plaintiff makes no attempt to distinguish (and does not even mention) *Chemical Bank* in its thirty-four page brief, though the case remains indisputably good law and has been cited by several courts post-*Zandford*. Second, Plaintiff asserts that the Loan itself qualifies as a security under *Reves v. Ernst & Young*, 494 U.S. 56 (1990), but is unable to cite a single case in which a transaction like the Loan satisfied the *Reves* test. It does not.

As to the alleged preferential liquidity "scheme," Defendants demonstrated that the claims brought under Section 17(a)(1), Section 10(b), Rule 10b-5, and Section 206(1) of the Advisers Act should be dismissed because the Complaint does not adequately allege *scienter*. In response, Plaintiff first argues that the "strong inference" standard does not apply to SEC actions. But Plaintiff is wrong, as the very cases that Plaintiff itself cites make clear. In addition, Plaintiff argues that the Complaint does allege facts showing that the Harbinger Defendants engaged in conscious misbehavior—but, as discussed below, none of the alleged facts Plaintiff relies on meet this high standard. Plaintiff does not cite a single case holding otherwise.

Finally, all of Plaintiff's claims fail to satisfy the materiality requirement applicable to claims under Section 17(a), Section 10(b), Rule 10b-5, and Section 206 of the Advisers Act. With regard to the Loan claims, Plaintiff asserts that the Lock-Up is "irrelevant" (Opp. at 20), but cites no cases in support of this proposition. Rather, Plaintiff asserts that the Loan was "plainly material" because it was not "what investors expect from a fiduciary." (Opp. at 19.) But what an investor may or may

2

not "expect" from a fiduciary is not the test for materiality under the securities laws. Similarly, and as to the preferential liquidity claims, Plaintiff offers only the conclusory assertion that a reasonable investor would find the alleged "scheme" to be material. But Plaintiff does not explain how a reasonable investor could have found the alleged side letters material in light of HCP Fund I's governing documents, which expressly permitted preferential treatment of the kind alleged here.

For all of these reasons, and for the reasons stated in the Harbinger Defendants' opening brief, the Complaint should be dismissed.

## II. ARGUMENT

### A. The Securities Fraud Claims Relating to the Loan Should Be Dismissed Because the Complaint Fails to Allege Any Misrepresentations or Omissions in Connection with the Offer, Purchase or Sale of Securities

With respect to the Loan, Plaintiff argues that the Complaint alleges a fraudulent act "in connection with the purchase or sale of a security" because "Falcone pledged his equity interest in SSF as security" (Opp. at 14), and because the Loan itself "qualifies as a security" under *Reves v. Ernst & Young*, 494 U.S. 56 (1990) (Opp. at 17). Both arguments fail.

#### 1. The Pledge Does Not Satisfy the "in Connection with" Requirement

Plaintiff relies on *Rubin v. United States*, 449 U.S. 424 (1981) for the proposition that Falcone's pledge of his SSF interests satisfies the "in connection with" requirement. (Opp. at 15.) But *Rubin* merely held that a pledge of stock *could*—under appropriate circumstances—be considered a "sale" of a security. It did not hold that *all* transactions involving a pledge of a security—no matter how attenuated from the alleged misrepresentation or omission—satisfy the "in connection with" requirement. In fact, in *Rubin* the Court expressly declined to "decide whether misrepresentations or omissions involved in a securities transaction but *not pertaining to the securities themselves* can form the basis of a violation of § 17(a)." 449 U.S. at 429 n.6 (emphasis added).

3

The Second Circuit considered the required relationship between a pledge of securities and the alleged fraud in *Chemical Bank*, holding that where the alleged fraud does not relate to the pledge, the "in connection with" requirement is not met. 726 F.2d at 943. In *Chemical Bank*, a bank loaned money to Frigitemp and its wholly owned subsidiary, Elsters, based on Arthur Andersen's representations about Frigitemp's financial condition. *Id.* at 933. As part of the deal, Frigitemp pledged 100% of Elsters' stock as collateral. *Id.* The Second Circuit held that "Andersen's alleged misrepresentations concerning Frigitemp (but not Elsters) were not in connection with the sale or purchase of the Elsters stock" for purposes of Section 10(b), Rule 10b-5 and Section 17(a). *Id.* at 945. Using language that could have been written for this case, the Court concluded that "it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part." *Id.* at 943.[3]

Here, like in *Chemical Bank*, the Pledge at issue bears no more than a tangential relationship to the misrepresentations and omissions alleged in the Complaint. Tellingly, the Complaint barely mentions the Pledge, referring to it only in passing. (*See, e.g.*, Compl. ¶ 41 ("[t]he only pledged collateral for the loan was Falcone's interest in SSF"). Furthermore, none of the alleged misrepresentations or omissions concerning the Loan "coincided" temporally with the Pledge (or

---

[3] Plaintiff suggests that *Chemical Bank*'s holding is no longer valid in light of *SEC v. Zandford*, 535 U.S. 813 (2002). (*See* Opp. at 15.) But both the Second Circuit and other courts have continued to rely on *Chemical Bank* after *Zandford*. *See, e.g.*, *Ring v. Axa Financial, Inc.*, 483 F.3d 95, 100 (2d Cir. 2007) ("In *Chemical Bank* . . . because plaintiffs did not allege that defendants made any misrepresentations concerning the security, we held that plaintiffs could not maintain a Section 10(b) lawsuit."); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871-72 (9th Cir. 2010) ("While a pledge of securities can effect a transfer of 'an interest in a security' sufficient to qualify as a 'sale' of a security . . . it is not sufficient [merely] to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part.") (citing *Chemical Bank*); *SEC v. Roanoke Technology Corp.*, No. 6:05-cv-1880-Orl-31KRS, 2006 WL 3813755, at *5 (M.D. Fla. Dec. 26, 2008) (citing *Chemical Bank* to dismiss securities fraud claims where the "SEC is, at best, arguing that [the defendant] 'committed a proscribed act in a transaction of which the pledge of a security is a part'"). In any event, nothing in *Zandford* supports Plaintiff's position as to the Pledge. *Zandford* simply held that the "scheme to defraud" must "coincide" with the sale of securities, 535 U.S. at 820, and subsequent decisions from this district have confirmed that the alleged misrepresentations or omissions still must relate to the particular securities transaction being challenged. *See, e.g.*, *SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2012 WL 5838794, at *5 (S.D.N.Y. Nov. 19, 2012) (recognizing that *Zandford* and other cases "all make clear . . . that the alleged fraud—even if attenuated . . . —must be 'in connection with' the particular securities transaction for which redress is sought.") (emphasis added).

4

with any securities transaction). Rather, all of those alleged misrepresentations and omissions were made long after the Pledge was granted on October 14, 2009 (Compl. ¶ 41).

Plaintiff struggles to cure this deficiency by arguing that these separate events occurred as a part of a "series of deceptive acts and omissions." (Opp. at 17.) In support of this argument, Plaintiff cites *Romano v. Kazacos*, 609 F.3d 512, 524 (2d Cir. 2010), for the proposition that misrepresentations or omissions coincide with a securities transaction where they are part of a "string of events that were all intertwined." But *Romano* does not support Plaintiff's position, as the Court there found the "in connection with" requirement satisfied where employees of the defendant made alleged misrepresentations about expected investment returns and, eighteen months later, the plaintiff retirees invested with the firm. The *Romano* court held that because the defendants' misrepresentations induced the plaintiffs to purchase securities, the "time that lapsed" between the "proscribed conduct and the sale" was not determinative. *Id.* Here, in contrast, there is no causal relationship between the alleged misrepresentations or omissions and any securities transaction. Because of the Lock-Up, no interests in the SSF could be bought or sold until after the Loan was disclosed. Thus, the causal link that was determinative in *Romano* is absent here.

Nor can Plaintiff plausibly contend that the Pledge "coincided" with the alleged misrepresentations and omissions simply because the Pledge "remained in effect until March 2011." (Opp. at 16.) As explained above, *Chemical Bank* makes clear that the mere existence of a pledge does not satisfy the "in connection with" requirement as to misrepresentations or omissions that relate to the larger transaction (*i.e.*, the Loan) and not to the pledge itself. *See* 726 F.2d at 943.

In sum, because the misrepresentations and omissions related to the Loan do not "coincide" in timing or substance with the Pledge, Plaintiff cannot invoke the Pledge to satisfy the "in connection with" requirement.

### 2. The Loan Is Not A Security

Plaintiff next argues that the Loan itself qualifies as a security under *Reves*. Plaintiff is wrong. As described in the Harbinger Defendants' opening brief, *Reves* sets forth a four-part test for determining when a loan qualifies as a security. (Br. at 14-16.)

The first *Reves* factor considers the "motivations that would prompt a reasonable seller and buyer to enter into" the transaction. 494 U.S. at 66. Plaintiff contends that the first factor is satisfied because the Loan was structured "with the motivation and expectation that it was an investment of SSF" and Falcone "considered the loan to be an investment of SSF." (Opp. at 18.) But *Reves* goes on to state that "if the note is exchanged . . . *to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose* . . . the note is less sensibly described as a 'security.'" 494 U.S. at 66 (emphasis added). Here, the entire premise of Plaintiff's action is that the Loan was designed to address Falcone's cash-flow difficulties.

Plaintiff also contends that the Loan satisfies the third *Reves* factor—the "reasonable expectations of the investing public." *Id.* As the Harbinger Defendants explained in their opening brief, Plaintiff's argument simply makes no sense as a factual matter—the Loan was a wholly private transaction and there was *no* expectation that it would be traded publicly. *See Benedict v. Amaducci*, No. 92 Civ. 5239 (KMW), 1995 WL 413206, at *10 (S.D.N.Y. July 12, 1995) (notes evidencing a private loan fail to satisfy the third *Reves* factor because "there was no public expectation that the notes would be traded as securities").

Finally, Plaintiff suggests that the Loan satisfies the fourth *Reves* factor because "regulatory schemes that can reduce participant risk, such as banking regulators or the FDIC [sic], are not present here." (Opp. at 18.) But Plaintiff misstates the nature of the factor, which is not limited to "regulatory schemes," but also includes other means of "reduc[ing] the risk of the instrument." 494

U.S. at 67. The fact that the Loan was fully (and indeed over) secured by Mr. Falcone's interest in the SSF counsels against the fourth *Reves* factor, and further shows that the Loan was not a security.[4]

In sum, the Loan claims under Section 10(b), Rule 10b-5 and Section 17(a) should be dismissed because Plaintiff has failed to allege any misrepresentations or omissions in connection with the "offer or sale" or "purchase or sale" of securities.

> **B.  The Fraud-Based Claims Relating to the Preferential Liquidity "Scheme" Must Be Dismissed Because the Complaint Fails to Adequately Plead *Scienter***

Plaintiff's "preferential treatment" claims under Section 17(a)(1), Section 10(b), Rule 10b-5, and Section 206(1) of the Advisers Act must be dismissed because the Complaint fails to allege facts giving rise to a strong inference of fraudulent intent. In response to this argument, Plaintiff asserts that the "strong inference" standard does not apply "to enforcement actions brought by the SEC" (Opp. at 25). But Plaintiff has apparently mistaken the "strong inference" standard under the PSLRA (which in fact does not apply to SEC actions) with the Second Circuit's "strong inference" standard set forth in *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994), which *does* apply to SEC actions, as Plaintiff's own cases show.[5] As a result, to adequately allege *scienter* under the applicable Second Circuit standard, Plaintiff must allege facts: (1) showing "that defendants had both motive and opportunity to commit fraud," or (2) "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Czarnik*, 2010 WL 4860678, at *6. The Complaint alleges neither.

---

[4]  *See, e.g.*, *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 585 (6th Cir. 2000) ("the fourth factor again mitigates against these notes being securities, since, as applied in *Reves*, the existence of collateral is significant as a risk-reducing factor").

[5]  *See SEC v. Pentagon Capital Mgmt. PLC*, 612 F. Supp. 2d 241, 264 (S.D.N.Y. 2009) ("The Court therefore applies the Second Circuit's 'strong inference' standard under Rule 9(b)."); *SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678, at *6 (S.D.N.Y. Nov. 10, 2010) ("To adequately plead scienter in the context of securities fraud, a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'"); *In re Reserve Fund Sec.*, 732 F. Supp. 2d 310, 318 (S.D.N.Y. 2010) (recognizing that the "Second Circuit has long required plaintiffs making fraud claims to 'allege facts that give rise to a strong inference of fraudulent intent'"); *SEC v. Dunn*, 587 F. Supp. 2d 486 (S.D.N.Y. 2008) (applying the Second Circuit's "strong inference" standard).

Apparently unable to allege motive and opportunity to commit fraud, Plaintiff instead refers to "strong circumstantial evidence of conscious misbehavior." (Opp. at 26.) But the alleged actions and inactions that Plaintiff recites—the failure to disclose purported "quid pro quo" arrangements;[6] the failure to obtain board approval for side letters; and the failure to comply with "most favored nation" clauses in investor agreements[7]—provide no evidence (let alone "strong" evidence) of conscious misbehavior or recklessness. *Scienter* "based on conscious misbehavior...requires a showing of deliberate illegal behavior...a standard met when it is clear that a scheme, viewed broadly, is necessarily going to injure." *Gould v. Winstar Communications, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012) (emphasis added) (citations and quotation marks omitted). Here, the Complaint alleges no facts establishing that any of the Harbinger Defendants' actions were in fact illegal, much less that the Harbinger Defendants *were aware* that their actions were illegal. Nor does the Complaint allege that the preferential liquidity "scheme" injured anyone.

### C. The Complaint Fails to Allege Any Material Misrepresentations or Omissions About the Loan or the Preferential Liquidity "Scheme"

Plaintiff concedes that all of its claims are subject to a materiality requirement. (Opp. at 18-19 & 26.) For misstatements or omissions to be considered material, Plaintiff must show that a reasonable investor would have considered them important in making an *investment decision*. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

#### 1. The Loan Claims Fail to Satisfy the Materiality Requirement

Plaintiff argues that its Loan claims satisfy the materiality requirement because "as fiduciaries, Falcone and Harbinger at a minimum had a duty to disclose related party transactions

---

[6] The Complaint identifies two instances in which the Harbinger Defendants allegedly failed to disclose information to investors. Compl. ¶¶ 83, 87. However, as the Complaint concedes, the "governing documents *allowed* the fund to enter into side letters with investors," *id.* ¶ 85 (emphasis added), and the Harbinger Defendants had no clear duty to further disclose the side letters in advance of the vote on the HCP Fund I's gate. Defendants also had no clear duty to disclose the side letters in response to investor questionnaires, which required disclosure only of side letters with "more favorable" terms—an inherently subjective trigger. *Id.* ¶ 87.

[7] Plaintiff's reference to most favored nation provisions would at most support a claim for breach of contract—not a claim for securities fraud.

8

such as the loan," and that this is "what investors expect from a fiduciary." (Opp. at 19.) Once again, Plaintiff is conflating the standard for purported fiduciary duty claims with the specific pleading requirements to state a claim for securities fraud.[8] Defendants have demonstrated, and Plaintiff does not dispute, that the Lock-Up of the SSF did not allow *any* investor to make *any* investment decisions at all during the relevant time period. While Plaintiff cites two cases holding that allegations involving a fund's related-party transactions were material to investors,[9] neither involved a fund where—as here—redemptions were suspended throughout the relevant period and the investors by definition had no ability to act. Rather, in those cases the investors had the ability to make investment decisions based on the information that allegedly was not disclosed. Plaintiff has cited no cases where information was held to be material in circumstances like those present here.

Plaintiff also contends that, notwithstanding the Lock-Up, SSF investors "were twice asked to make investment decisions regarding how their assets would be managed," and that "Defendants' self-dealing was material to the investors' decision on these proposals." (Opp. at 22.) This argument fails because the Complaint—in the course of alleging Falcone's purported motive to conceal the Loan—alleges only that SSF investors were asked to "vote on . . . two restructuring proposals." Compl. ¶ 21. The Complaint does not allege that these votes constituted investment decisions,[10] and Plaintiff cites no authority to that effect.

---

[8] Plaintiff's reference to "what investors expect from a fiduciary" is in any event irrelevant because under the Advisers Act, an investment adviser "owes fiduciary duties only to the fund, not to the fund's investors." *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006); *see also SEC v. Mannion*, 789 F. Supp. 2d 1321, 1338 (N.D. Ga. 2011) ("[T]o support a claim under Section 206(1), the SEC must plausibly allege that Defendants employed a 'device, scheme, or artifice to defraud' the Fund itself, rather than the Fund's investors.").

[9] *See Mannion*, 789 F. Supp. 2d 1321; *I-Enterprise Co. v. Draper Fisher Jurvetson Mgmt. Co.*, No. C-03-1561-MMC, 2005 WL 3590984 (N.D. Cal. 2005).

[10] Under the first proposal, SSF investors could elect to have "part or all of their [SSF] investment gradually reallocated to a lower volatility cash and cash equivalent program." (Stoelting Decl. Ex. D.) This would not have avoided the Lock-Up, as the reallocated amounts "[could not] be redeemed," *id.* at ii, and, in any event, Plaintiff admits that the proposal was withdrawn. (Opp. at 22 n.6.) Thus, it could not (and did not) result in any investment decisions.

Under the second proposal, SSF's portfolio would be consolidated with the portfolio of Fund II (which followed a similar investment strategy). SSF investors could elect to receive either interests in Fund II or cash. (Stoelting Decl. Ex. E.) However, as Plaintiff concedes, the investors' election was not due until three weeks *after* the Loan was disclosed. (Opp. at 22.) Plaintiff simply speculates that some investors might have submitted elections before the Loan was disclosed, and that such investors "would have been deprived of that material information." (*Id.*) The

### 2. The Preferential Liquidity Claims Also Do Not Satisfy the Materiality Requirement

Finally, the Harbinger Defendants showed in their opening brief why all of the preferential liquidity claims must be dismissed on materiality grounds. Plaintiff asserts that the materiality argument "is based purely on factual grounds" and should be rejected for that reason. (Opp. at 26.) But the Complaint's factual allegations—which must be taken as true for purposes of this motion—and HCP Fund I's governing documents (which are referenced in the Complaint, and which the Court is free to consider) conclusively establish that side letters and the alleged grant of "preferential liquidity" were permitted. For that reason, the Court should reject Plaintiff's allegation that a reasonable investor would have considered a further, more specific disclosure to be material.

The only case Plaintiff cites in support of materiality, *SEC v. Gabelli*, 653 F.3d 49 (2d Cir. 2011), is entirely inapposite. *Gabelli* involved the alleged failure to disclose a market timing scheme that allowed one fund investor to earn returns of 185 percent, 160 percent, and 73 percent in three of its accounts while other investors "suffered annual losses of at least 24.1%." *Id.* at 54, 58. A reasonable investor plainly would consider omissions related to such disparate performance to be important in making an investment decision. Here, by contrast, the Complaint makes no allegation that investors in HCP Fund I received different levels of return on their investments in the fund. Moreover, in further contrast to *Gabelli*, HCP Fund I's governing documents *clearly* informed all investors that the fund was allowed to enter into side letters like those challenged in the Complaint.

### III. CONCLUSION

For the foregoing reasons, the Harbinger Defendants' motion to dismiss should be granted.

---

Court should reject this hypothetical, as the Complaint does not allege that any SSF investor actually made an election before the Loan's disclosure.

Dated: New York, New York
February 1, 2013

**THE DONTZIN LAW FIRM LLP**

/s/ Matthew S. Dontzin
Matthew S. Dontzin
David A. Fleissig
Tibor L. Nagy, Jr.
6 East 81st Street
New York, New York 10028
Tel: (212) 717-2900
Fax: (212) 717-8088

*Attorneys for Defendant Philip A. Falcone*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Leslie Gordon Fagen
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Defendant
Harbinger Capital Partners LLC*